IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PATRICK S. McHENRY,

    Plaintiff,

vs.           Case No. 12-2512-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

    Defendant.

MEMORANDUM AND ORDER

 This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

 The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

March 27, 2012, administrative law judge (ALJ) Evelyn M. Gunn issued her decision (R. at 14-21). Plaintiff alleges that he has been disabled since March 1, 2009 (R. at 14). Plaintiff is insured for disability insurance benefits through December

31, 2014 (R. at 16). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date of disability (R. at 16). At step two, the ALJ found that plaintiff has the following severe impairments: obesity and hypertensive cardiovascular disease (R. at 16). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17). After determining plaintiff's RFC (R. at 18), the ALJ determined at step four that plaintiff is able to perform past relevant work as a telemarketer (R. at 21). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III. Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530

n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ made the following RFC findings:

> …claimant…can lift and carry up to twenty pounds occasionally, sit for six hours in an eight-hour day, and stand or walk for thirty minutes at a time and for a total of two hours in an eight-hour day; he can occasionally perform all postural activities except he should never climb ladders, ropes, scaffolds, or stairs; he should avoid unprotected heights; and he has no non-exertional impairments.

(R. at 18).

As set forth above, "the RFC assessment must include a narrative discussion describing how the evidence *supports each conclusion*, citing specific medical facts and nonmedical evidence." Wells v. Colvin, __ F.3d ___, 2013 WL 4405723 at *5 (10th Cir. Aug. 19, 2013)(emphasis in original). The problem with the ALJ decision is that her decision does not show how the evidence supported any of her conclusions. The ALJ did not cite to any medical facts or nonmedical evidence in support of any of her RFC findings. The ALJ simply summarized the evidence, and then made a conclusory assertion that the RFC was supported by the "totality of the evidence" (R. at 21).

In the case of Fleetwood v. Barnhart, 211 Fed. Appx. 736 (10th Cir. Jan. 4, 2007), the ALJ relied on a state agency medical consultant who filled out a check-the-box evaluation form, which, standing alone, the court found did not constitute substantial evidence. The court stated that no other medical

7

evidence in the record specifically addressed her ability to work. The court held as follows:

> To the extent there is very little medical evidence directly addressing Ms. Fleetwood's RFC, the ALJ made unsupported findings concerning her functional abilities. Without evidence to support his findings, the ALJ was not in a position to make an RFC determination.
>
> The ALJ's inability to make proper RFC "findings may have sprung from his failure to develop a sufficient record on which those findings could be based." Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir.1994). The ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Soc. Sec. R. 96-8p, 1996 WL 374184, at *5. Because the disability hearing is nonadversarial, an ALJ is obligated to develop the record even where, as here, the claimant is represented by counsel. Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir.1993); accord Hawkins v. Chater, 113 F.3d 1162, 1164, 1168 (10th Cir.1997). Even though Ms. Fleetwood's counsel did not request any additional record development, the need for additional evidence is so clearly established in this record that the ALJ was obliged to obtain more evidence regarding her functional limitations. See Hawkins, 113 F.3d at 1167-68.

Fleetwood, 211 Fed. Appx. at 740-741; see Martin v. Astrue, Case No. 09-1235-SAC (June 28, 2010, Doc. 13-15, 16-18).

In the case before the court, there is absolutely no medical evidence regarding plaintiff's RFC. The record is devoid of any identifiable discussion explaining how the ALJ arrived at her RFC findings based on the evidence, or how the

8

evidence supported her RFC findings. The ALJ has failed to comply with SSR 96-8p. The ALJ, as noted above, must make every reasonable effort to make sure the file contains sufficient evidence to assess RFC. This record contains no medical opinion evidence regarding plaintiff's RFC. Unlike Fleetwood, which had at least one state agency assessment (which the court found, standing alone, did not constitute substantial evidence), in the case before the court there are no medical RFC assessments in the record. Furthermore, the ALJ has offered no explanation of how the evidence supports any of her RFC findings. The court has absolutely no idea of the basis of any of her RFC findings. Therefore, this case shall be remanded in order for the ALJ to comply with the requirements of SSR 96-8p, including a narrative discussion describing how the evidence supports each conclusion in the RFC assessment, citing specific medical facts and nonmedical evidence.[2]

---

[2] Defendant's brief cites to the case of Chapo v. Astrue, 682 F.3d 1285 (10th Cir. 2012), which states, in relevant part:

> …there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question….
>
> We have thus "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category.

Chapo, 682 F.3d at 1288-1289. However, the court's ruling in this case does not require that there be a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question, or specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine plaintiff's RFC. The holding in Chapo does not change the requirement in Fleetwood that to the extent there is very little medical evidence directly addressing a claimant's RFC, the ALJ's findings may be found to be unsupported by substantial evidence. The file must contain sufficient evidence to assess RFC. The record in the

When this case is remanded, the ALJ shall develop a sufficient record on which to make RFC findings. The ALJ should consider recontacting plaintiff's treating medical sources, request additional records, or order a consultative examination. 20 C.F.R. § 404.1520b(c); Fleetwood, 211 Fed. Appx. at 741; Lamb v. Barnhart, 85 Fed. Appx. 52, 57 (10th Cir. Dec. 11, 2003). The ALJ could also consider having a medical expert testify at the hearing regarding plaintiff's RFC after reviewing the record.[3] In the alternative, the ALJ could request a state agency assessment by a physician who could review the record and provide a written report setting forth their RFC findings and providing a thorough written explanation for their RFC findings.

**IV. Did the ALJ err by failing to order a consultative examination regarding plaintiff's sleep apnea, narcolepsy and/or hypersomnia?**

When plaintiff was hospitalized in March 2008, plaintiff was diagnosed with probable obstructive sleep apnea (R. at 298).

---

case before the court has no medical evidence addressing plaintiff's RFC, and the ALJ fails to cite to any evidence in support of any of her RFC findings. By contrast, in Chapo, the record included two physical RFC assessments (by Dr. Amin and Dr. Krause), Chapo, 682 F.3d at 1287. The court in Chapo reversed the decision of the Commissioner and remanded the case for further hearing. On remand, even with two physical RFC assessments, the court was troubled because of the staleness of one of those assessments, and encouraged the ALJ on remand to obtain an updated exam or report. Chapo, 682 F.3d at 1293.

[3] The U.S. Supreme Court has considered the use of medical advisors at administrative hearings and approved of the concept. Richardson v. Perales, 402 U.S. 389, 408 (1971). Such opinions are competent evidence and in appropriate circumstances may constitute substantial evidence supporting the ALJ's decision. Lopez v. Apfel, 1997 WL 758831 at *2 (10th Cir. Dec. 9, 1997)(ALJ properly relied on opinions of medical advisor and consulting physicians who disagreed with treating physician on issue of disability); Torres v. Secretary of HHS, 870 F.2d 742, 744 (1st Cir. 1989)(the testimony of a medical advisor who reviews the record, testifies and is subject to cross-examination may constitute substantial evidence depending on the circumstances, including the nature of the illness and the information provided to the advisor).

When plaintiff was hospitalized in July 2008, plaintiff was again diagnosed with probable obstructive sleep apnea (R. at 313, 319). Dr. Balmaceda recommended an overnight sleep study to rule out obstructive sleep apnea (R. at 325).[4] When plaintiff was hospitalized in October 2011, obstructive sleep apnea was again diagnosed, and Dr. Murphy stated that it was highly likely that plaintiff was suffering from obstructive sleep apnea (R. at 389, 391, 398-399). The medical records also noted that plaintiff had a history of daytime sleepiness, which ultimately resulted in plaintiff's dismissal from work (R. at 391). The ALJ noted that plaintiff testified that he lost his last job due to the company's finances and his falling asleep at work (R. at 18). However, the ALJ decision stated that there was no objective evidence in the record to support the assertion that plaintiff is unable to work due to alleged narcolepsy and hypersomnia (R. at 18).

Consultative medical examinations may be ordered by the ALJ when the information needed is not readily available from medical treatment sources. 20 C.F.R. §§ 404.1512(e), 404.1519a. The Commissioner has broad latitude in ordering consultative examinations. Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a

---

[4] Plaintiff testified that he has not been able to obtain a sleep study because it was not covered by MediKan (R. at 32).

consultative examination is often required for proper resolution of a disability claim.  Similarly, where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary.  There must be present some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation.  The claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists.  When the claimant has satisfied this burden in that regard, it then becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.  In a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.  In the absence of such a request by counsel, the court will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.  The ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability.  Hawkins v. Chater, 113 F.3d 1162, 1166-1168, 1169 (10th Cir. 1997; see Madrid v. Barnhart, 447

F.3d 788, 791-792 (10th Cir. 2006)(where additional tests are required to explain a diagnosis already in the record, resort to a consultative examination may be necessary).

In light of the fact that this case is being remanded in order for the ALJ to make proper RFC findings, on remand, the ALJ should make a determination as to whether a consultative examination is warranted regarding plaintiff's sleep apnea in light of the medical evidence, including a medical request for an overnight sleep study. That determination shall be made in light of the regulations and case law set forth above.

**V. Did the ALJ err in his reliance on the lack of treatment when evaluating plaintiff's credibility?**

The ALJ discounted plaintiff's testimony because his treatment had been "infrequent" (R. at 20). The ALJ noted a significant gap in treatment, for 3 years, from 2008-2011 (R. at 20). While failure to seek treatment may be probative of severity, the ALJ has a basic duty of inquiry to ask the plaintiff why he/she did not seek treatment, or why it was sporadic. Kratochvil v. Barnhart, 2003 WL 22176084 at *5 (D. Kan. Sept. 17, 2003). Similarly, SSR 96-7p states the following:

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the

13

> individual is not following the treatment as prescribed and there are no good reasons for this failure. <u>However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner</u>. The explanations provided by the individual may provide insight into the individual's credibility.

SSR 96-7p, 1996 WL 374186 at *7 (emphasis added); <u>cited with approval in</u> Madron v. Astrue, 311 Fed. Appx. 170, 178 (10th Cir. Feb. 11, 2009). The fact than an individual may be unable to afford treatment and may not have access to free or low-cost medical service is a legitimate excuse. Madron, 311 Fed. Appx. at 178; SSR 96-7p, 1995 WL 374186 at *8. At the hearing, the ALJ failed to ask the plaintiff to provide any explanation for her lack of treatment. Therefore, on remand, the ALJ shall comply with SSR 96-7p and consider any explanations plaintiff may provide for her lack of, or infrequent, treatment.[5]

---

[5] Plaintiff testified that he could not have a sleep study done because it was not covered by MediKan (R. at 32), and further testified that some medication prescriptions could not be obtained because they were not covered by MediKan (R. at 43).

14

**VI. Did the ALJ err in his consideration of plaintiff's daily activities?**

The ALJ stated that plaintiff's activities of daily living are inconsistent with his allegations of disability. The ALJ noted his ability to provide for his personal care, with minimal difficulty due to weight. The ALJ further noted that plaintiff prepared meals, cleaned, did laundry, took out trash, drove a car, managed money, shopped, played chess and watched movies (R. at 20).

According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity. 20 C.F.R. § 404.1572(c) (2013 at 399). Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in

15

household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work**.  As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability.  In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: "**We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work**.'" Id. (quoting Hogg v. Shalala, 45

F.3d 276, 278 (8th Cir.1995)). Moreover, we
have reminded the Commissioner

> **that to find a claimant has the
> residual functional capacity to
> perform a certain type of work,
> the claimant must have the ability
> to perform the requisite acts day
> in and day out, in the sometimes
> competitive and stressful
> conditions in which real people
> work in the real world...The
> ability to do light housework with
> assistance, attend church, or
> visit with friends on the phone
> does not qualify as the ability to
> do substantial gainful activity**.
>
> Thomas v. Sullivan, 876 F.2d 666, 669 (8th
> Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

Watching television, performing household chores, paying bills, counting change, taking walks and going shopping do not qualify as the ability to do substantial gainful activity. Watching television is not inconsistent with allegations that a person is unable to work. See Krauser v. Astrue, 638 F.3d 1324, 1333 (10th Cir. 2011)(watching television not inconsistent with allegations of pain and concentration problems). Therefore, on remand, the ALJ should examine plaintiff's daily activities in light of the above regulations and case law.

Furthermore, an ALJ cannot use mischaracterization of a claimant's activities of a claimant's activities by selective and misleading evidentiary review to discredit his/her claims of

17

disabling limitations.  Sitsler v. Astrue, 410 Fed. Appx. 112, 117-118 (10th Cir. Jan. 10, 2011).  Therefore, on remand, the ALJ should also take into consideration the limitations noted by plaintiff in his testimony regarding his daily activities (Doc. 24 at 18).

Plaintiff also asserts other errors by the ALJ in his credibility findings in addition to those set forth above.  The court will not address the remaining issues in detail because they may be affected by the ALJ's resolution of the case on remand after the ALJ makes proper RFC findings and gives proper consideration to plaintiff's lack of treatment and daily activities.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

**VII.  Should the case be remanded for further hearing or for an award of benefits?**

Plaintiff argues that this case should be reversed and remanded for an award of benefits.  When a decision of the Commissioner is reversed, it is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits.  When the defendant has failed to satisfy their burden of proof at step five, and when there has been a long delay as a result of the defendant's erroneous disposition of the proceedings, courts can exercise their discretionary authority to remand for an immediate award of

benefits. Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993). The defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion. Sisco v. United States Dept. of Health & Human Services, 10 F.3d 739, 746 (10th Cir. 1993). A key factor in remanding for further proceedings is whether it would serve a useful purpose or would merely delay the receipt of benefits. Harris v. Secretary of Health & Human Services, 821 F.2d 541, 545 (10th Cir. 1987). Thus, relevant factors to consider are the length of time the matter has been pending, and whether or not, given the available evidence, remand for additional fact-finding would serve any useful purpose, or would merely delay the receipt of benefits. Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006). The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

In the case before the court, there is no medical evidence regarding plaintiff's physical and/or mental limitations. There is no medical evidence in the record that indicates that plaintiff is disabled. Given the absence of substantial and

uncontradicted evidence in the record indicating that plaintiff is disabled and entitled to benefits, this case shall be reversed and remanded for further hearing in order to properly and fully develop the record.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 11th day of September, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge